**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NORVELL ROLLING,

                        Plaintiff,

    v.                                         No. 09-CV-135
                                              (DNH/DRH)

MARIA ROTHER, Correctional Officer,
Hudson Correctional Facility; STEVEN M.
ULRICH, Sgt/Lt., Hudson Correctional
Facility; MICHAEL URVAN, Captain,
Hudson Correctional Facility; JEFF McKOY,
Superintendent, Hudson Correctional
Facility; BRIAN FISCHER, Commissioner,
and NYS Dept of Corrections,

                        Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

NORVELL ROLLING
Plaintiff Pro Se
Post Office Box 424
Bronx, New York 10467

HON. ERIC T. SCHNEIDERMAN        DAVID L. COCHRAN, ESQ.
New York State Attorney General           Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Norvell Rolling ("Rolling"), formerly an inmate in the custody of the New

York State Department of Correctional and Community Services ("DOCCS"), brings this

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

action pursuant to 42 U.S.C. § 1983 alleging that the Commissioner, a Superintendent, and three DOCCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments.  Am. Compl. (Dkt. No. 7).  Presently pending is defendants' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt No. 51.  Rolling opposes the motion.  Dkt. No. 54.  For the following reasons, it is recommended that defendants' motion be granted.

## I.  Background[2]

The facts are related herein in the light most favorable to Rolling as the non-moving party.  See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999).

In September 2007, while incarcerated at Hudson Correctional Facility ("Hudson") and after visiting with his girlfriend, Rolling was taken out of his cell to provide a urine sample per defendant Rother's orders.  Am. Compl. at 6.  Rolling awaited the results of the urinalysis, which was negative, in a holding cell while his cell was simultaneously searched for contraband.  Id. at 6-7.  The same events occurred in November of 2007 after receiving another visit from his girlfriend.  Id.  On December 23, 2007, while again visiting with his girlfriend, Rolling went to use the rest room.  Id. at 7.  Rother used a surveillance camera to watch Rolling as he urinated and then claimed to her supervisor, defendant Ulrich, that she had observed Rolling insert contraband into his anus.  Id.  Rolling contends that Rother's actions in watching a member of the opposite sex in a state of undress were prohibited by

---

[2] Rolling submitted additional documents to serve as evidence of ongoing harassment at other correctional facilities.  Dkt. No. 43.  All additional information concerns individuals that are not named defendants.  To the extent that claims may be asserted against these individuals, they must be alleged in a separate claim or action.

facility regulations.  Id.

Shortly thereafter, Ullrich entered the visiting area, removed Rolling, and had another officer inform his girlfriend that their visitation had been terminated.  Am. Compl. at 8-9.  Rolling was taken to a room where he was strip searched by two third party corrections officers.  Id. at 8.  Rolling was then transferred to Coxsackie Correctional Facility ("Coxsackie") where he was handed to three unidentified corrections personnel, one of which spoke to him "in a very threatening voice" because Rolling's incident precluded the officer from going home to spend the holidays with his family.  Id. at 9.

Upon arrival at Coxsackie, Rolling was instructed to take off his handcuffs.  Am. Compl. at 9.  However, the right handcuff malfunctioned and the unidentified corrections officer proceeded to contort and pull Rolling's hand out of the mechanical restraint, lacerating and injuring his fingers to the point Rolling thought they were either dislocated or broken.  Id.  Rolling was told that medical attention would be provided for his hand, and while an unidentified nurse came to provide him with laxatives, no pain relief or treatment for his hand was rendered.  Id. at 10-11.

In order to prove that Rolling did not insert contraband into his anus, he was required to defecate four times.  Am. Compl. at 10.  While this was occurring, Rolling did not have running water at his disposal to wash his hands, despite the fact that he was continually going to the bathroom and was provided his meals.  Id.  As a consequence of the multiple, repeated bowel movements in such a short period of time, Rolling contends that he "develop hemorridal [sic] tissue which bled frequently and painfully, and has become a chronic condition."  Id. at 11.

Upon returning to Hudson, the pain in Rolling's hand, as well as numbness, continued

3

to increase throughout his incarceration.  Am. Compl. at 11.  Ultimately, in February 2008, an unidentified doctor sent Rolling for an x-ray, which revealed bone fragments and arthritis in his fingers.  Id. at 12.  Rolling contends that the bone fragments were a result of the trauma he suffered at Coxsackie.  Id.  A subsequent consultation was arranged at Albany Medical Center, where the medical staff indicated that Rolling required surgery for nerve damage which was present in his arm.  Id.  The surgery was never scheduled.  Id.  Rolling continued suffering from pain which, at times, required him to wear a brace.  Id.

On December 29, 2007, Rolling filed a grievance against Rother and Ullrich for the way Rolling was treated on December 23.  Am. Compl. at 11; Dkt. No. 7 at 19.  Rolling was assigned an advisor, defendant Urvan, to assist him with his grievance.  Am. Compl. at 11.  While Ulvan was initially helpful, he "became abrasive and eventually abusive . . . informing [Rolling] that nothing could be done or would be done, and that [Rolling] should simply sign off on the grievance and walk away.  When [Rolling] insisted that [he] was determined to go forward, [Ulvan] became aggressive, abusive and threatening."  Id.  Rolling argues that he was not provided adequate assistance.  Id. at 11-12.

Shortly after filing the present complaint on February 2, 2009, Rolling sent out copies of the complaint to the named defendants.  Am. Compl. at 12-13.  The following day, Rother issued a misbehavior report against Rolling for allegedly threatening and harassing her by sending her personal mail at the facility.  Id. at 13; Dkt. No. 7 at 22.  On February 4, 2009, Rolling filed a grievance against various non-party corrections personnel for issuing and acting upon the false misbehavior report in connection with the legal mail Rolling had previously sent to Rother.  Dkt. No. 7 at 20-21.  On March 2, 2009, a disciplinary hearing occurred at which Rolling was adjudged not guilty of the misbehavior report explaining that

the mail delivered to Rother was legal in nature and filed pursuant to the appropriate policies.  Am. Compl. at 14; Dkt. No. 7 at 23-24.  This action followed.

## II. Discussion

Rolling contends that his Eighth Amendment rights have been violated by being subjected to various forms of harassment and injuries at Coxsackie.  Additionally, Rolling asserts that his Fourteenth Amendment rights were violated when he was provided with ineffective assistance from his inmate advisor, Urvan.  Defendants move for partial summary judgment based on Rolling's failure to allege the personal involvement of defendants McKoy and Fischer in all claims, and the remaining defendants with respect to Rolling's Eighth Amendment claims regarding physical injuries he sustained at Coxsackie.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### C. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.

6

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

>  (1) [T]he defendant participated directly in the alleged constitutional violation;
> 
>  (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> 
>  (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> 
>  (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> 
>  (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[3]

### 1. Fischer and McKoy

The gravamen of Rolling's complaints against Commissioner Fischer and Superintendent McKoy is that they were in a position of power and thus always involved with anything occurring in conjunction with Rolling's incarceration.  Rolling contends that Fischer "holds ultimate responsibility for the actions of his subordinates . . . [and] represents

---

[3] Various courts in the Second Circuit have considered how, if at all, the decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), affected the five Colon factors which were traditionally used to determine personal involvement.  See McCarroll v. Fed. Bureau of Prisons, No. 08-CV-1343 (DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon factors, several district courts have done so); Kleehammer v. Monore County, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (holding that Iqbal did not eliminate Colon's personal involvement standard).

the correctional system itself," (Dkt. No. 54 ¶ 8)[4] and McKoy had a responsibility to "[e]nsure that [Rolling's] grievance was treated in a fair and just manner." (Dkt. No. 54 ¶ 7).

However, attempts to establish personal involvement based upon the supervisory role these defendants occupied is inappropriate. Wright, 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement). Furthermore, Rolling's conclusory allegations with respect to McKoy fail to establish that he was aware or involved with Rolling's grievance. Receipt of a letter or grievance, without personally investigating or acting on it, is insufficient to establish personal involvement. See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y.2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). Rolling has also failed to proffer any plausible allegations of formation or implementation of unconstitutional policies or gross negligence in supervision of subordinates.

Accordingly, defendants motion on this ground should be granted and judgment granted as to all claims against Fischer and McKoy.

---

[4] While Rolling asserts what is assumed to be an argument against defendants' motion, he also states that he "cannot argue that [Commissioner Fischer] was personally involved in this matter." Dkt. No. 54 ¶ 8.

### 2. Rother, Ulrich and Urvan

Defendants move for summary judgment on Rolling's claims for injuries sustained at Coxsackie on the ground that neither Rother, Ulrich, nor Urvan was present at Coxsackie and had no part in the events which led to the injuries to Rolling's hand. Rolling contends that but for Rother's false accusations, he would never have been transferred to Coxsackie.

In order to prevail on a § 1983 claim, "[a] plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). Under this standard, Rolling has failed to allege or prove that any of these defendants had any tangible connection to the alleged Eighth Amendment violations he suffered at Coxsackie. There are no assertions that these defendants were involved in the decisions surrounding the restraining, transportation, housing, processing, or investigation of Rolling at Coxsackie. Moreover, there were a multitude of intervening actions and actors between defendants' acts of confining Rolling at Hudson for his alleged contraband and Rolling's subsequent experiences at Coxsackie. Accordingly, Rolling has failed to state a plausible basis for a tangible connection between these three Hudson employees and what subsequently occurred after his arrival at Coxsackie.

Accordingly, defendants' motion on this ground should be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for partial summary judgment (Dkt. No. 51) be **GRANTED**, judgment should be granted as to all claims against defendants McKoy and Fischer, and judgment should be granted to

9

defendants Rother, Ulrich, and Urvan on all Eighth Amendment claims regarding the medical treatment Rolling received at Coxsackie.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 16, 2012
       Albany, New York

_David R. Homer_
United States Magistrate Judge